ROBERT CURTIS *versus* NATHANIEL TREAT.

Where the premises have been occupied without the knowledge or consent of the owner, the state of landlord and tenant does not exist between him and the occupant; and an action for use and occupaton cannot be sustained.

It is, however, competent for the parties to waive the tort; and if the tort be waived by them, the owner may have his remedy in assumpsit.

EXCEPTIONS from the Eastern District Court, CHANDLER J. presiding.

Assumpsit for the use of a sawmill, in Orono, during the summer of the year 1838.

The writ contained a count on an account annexed, and one for money had and received, and by leave of Court, the plaintiff also added a count for use and occupation. The writ was dated, August 23, 1839.

The plaintiff proved by one Joy, that on the first of June, 1838, he hired the sawmill of the defendant, and continued sawing in it till 11th or 12th of July following; that he paid him the rent by sawing for him, within that time, a quantity of lumber and letting him have a note against one Johnson for $255. On cross-examination, he further testified, that Treat said, that in letting the mill to him he was acting as agent for one Bolles, who had been the owner of the mill.

The defendant at first rested his defence on a claim of title to the mill by virtue of a tax sale and deed of the same from the collector of Orono for the year 1835, and proceeded to introduce the proper evidence to sustain his title. A defect being found to exist in the proceedings of the collector, he abandoned this defence, and introduced a witness who testified that he was in the defendant's store in Orono in the spring of 1839, when the plaintiff came in for the purpose, as he said, of looking up the rent of his mill for 1838; that the plaintiff said he had written to a Mr. Whitman of Bangor to rent the mill, but Mr. Whitman had told him the mill was not rented; that the defendant told the plaintiff he had rented the mill to Joy; that the plaintiff then asked him what he had rented the mill for, and the defendant replied that he had rented it as

testified by Joy; that the plaintiff said he was glad he had let the mill, and had been afraid the mill had not been let; that he asked to see the note and that, it being exhibited, he took it, and wanted to sell it to Treat, said Treat could collect it better than he could, but Treat declined buying it; that he said it ought to have been indorsed. The witness, who was the defendant's clerk, said the payee was in the neighborhood, and he could easily procure his indorsement, and Curtis then requested him to do so. The parties had some further conversation on the subject. The plaintiff said he was going to Upper Stillwater, and could not stop to settle then, but could attend to it in the afternoon. While the parties were talking, the witness left the store to procure and did procure the indorsement of said note, and when he returned the parties had left, and he placed the note on the defendant's file, where it has ever since remained. The plaintiff never called afterwards to witness' knowledge, to attend to it.

The defendant contended, that in letting the mill, he acted as agent for Bolles, who had been and whom he supposed was still the owner of the mill; that afterwards, the plaintiff had ratified and confirmed his acts, and that this made him his agent; that he had offered, and the plaintiff had accepted all that was due him for said rent, and all the defendant had received; that he was at that time, and ever had been ready to account to the plaintiff on demand. No other evidence was offered in support of these positions, than as above stated. The defendant further contended, that he was not liable in this action, no demand having been proved to have been made on him to account.

And hereupon the Judge instructed the jury, that if they should find that the plaintiff ratified and adopted the acts of the defendant in letting the mill to Joy, claiming the benefit of them, he thereby made the defendant his agent, and such ratification would be equivalent to a prior authority; that the defendant was not held in this suit for the note, until the plaintiff had demanded it, and the defendant had refused to deliver it; nor if the jury believed that the plaintiff had by the transac-

tion in the defendant's store, accepted the note, nor if they believed it was then agreed, that the whole of this matter should be subsequently settled at the defendant's store, and the plaintiff had never called there to settle it; but if there had been a demand of the note and refusal of it by the defendant he was liable for its value, unless there was a waiver of this proceeding by a subsequent agreement to settle it at the defendant's store, and a neglect by the plaintiff to attend to it there; and that the action could not be sustained for the balance of the rent unless a demand had been made for settlement prior to the bringing of the action, unless the jury believed it was agreed by the parties that the whole of this matter had been subsequently settled at the defendant's store, and the plaintiff had never called there and settled it.

The jury returned a verdict for the defendant, and the plaintiff filed exceptions to the ruling of the Judge.

*A. W. Paine* argued for the plaintiff; and cited *Clark* v. *Moody*, 17 Mass. R. 145; *Langley* v. *Sturtevant*, 7 Pick. 214; *Coffin* v. *Coffin*, 7 Greenl. 298; *Arms* v. *Ashley*, 4 Pick. 71; *Miller* v. *Miller*, 7 Pick. 133.

*Washburn* argued for the defendant; and cited *Selden* v. *Beale*, 3 Greenl. 178; *Clark* v. *Moody*, 17 Mass. R. 145; *Torrey* v. *Bryant*, 16 Pick. 528; *Hemenway* v. *Hemenway*, 5 Pick. 389; *Copeland* v. *Wadleigh*, 7 Greenl. 141.

The opinion of the Court, SHEPLEY J. not sitting in the case, having been employed at the time of the argument in holding the jury term in the County of Piscataquis, was drawn up by

WHITMAN C. J. — The object of this suit appears to be to recover for the use of a sawmill, during the year 1838. The defendant appears to have occupied it, by an under tenant, for that year, supposing it, as he, at sometimes pretended, to belong to one Bolles. The occupation, therefore, was without the consent previously obtained, and in fact without the knowledge of the plaintiff. The state of landlord and tenant, in

such case would not exist between the parties. The plaintiff might have brought trespass for the mesne profits against the defendant; but an action for use and occupation, under such circumstances, could not have been sustained.

There would however, seem, subsequently, to have been, on the part of the defendant, according to the testimony of a witness introduced by him, a recognition of the plaintiff's right, and that the rent belonged to him. If this should be deemed tantamount to an original implied occupation, as lessee to the plaintiff, this action for use and occupation may be sustained. It was competent to the parties to agree to waive the tort, and to change the liability of the defendant into an assumpsit. What took place between the parties, as represented by the above witness, seems to us to have been to that effect. *Ball* v. *Gibbs*, 8 Ter. R. 327. In such case it is for the defendant to show payment, or accord and satisfaction, if he would exonerate himself from liability in this action; neither of which has he done.

The Judge, who tried the cause, in his instruction to the jury, to which the plaintiff excepted, seemed to consider what took place in the presence of the above witness, as a recognition of the defendant as an agent in letting the mill; but to us it seems that such a construction of what then passed, did not amount to any thing of the kind. It has rather the semblance of a loose conversation between the parties, about the use which had been made of the mill; the plaintiff expressing his satisfaction at the prospect of deriving income from it, and the defendant freely conceding, that he was entitled to it, and stating what payment he had received on account of it, and was willing to surrender.

The idea of an agency for the plaintiff is forcibly refuted by the defence, which the defendant, at first, attempted to maintain. The defendant could not be owner himself, and, at the same time, agent for the plaintiff. This would be utterly absurd. After setting up such a claim, and finding himself unable to sustain it, the pretence, afterwards set up, that he was the

implied agent of the plaintiff in letting the mill, must have come with a very ill grace from him.

But suppose the plaintiff had instituted an action of account against the defendant, declaring against him as his agent and receiver, how could his agency have been made out? and what would have been the effect of the proof here adduced? Could it have been deemed sufficient to establish any such fact? The defendant had conceded nothing of the kind; but alleged that he had acted as agent for Bolles. The presumption, however, notwithstanding what may have been pretended, would seem more naturally to be, that he in fact acted for himself, and not as agent to any one else; since it appears, that he had possessed himself of a title under a sale for taxes, which he attempted to establish in his defence. We think, therefore, that his defence fails him upon the latter, as well as upon the former ground.

*Exceptions sustained*
*and a new trial granted.*